## CICERO–SMITH LUMBER CO. v. DENTON.
(No. 3230.)

Court of Civil Appeals of Texas. Amarillo.
May 1, 1929.

plea that he had made a $300 payment on the note about 30 days after its execution, which payment had not been credited on the note. He further pleaded by cross-action for damages, both actual and exemplary, for the wrongful issuance and levy of the writ of attachment upon the cotton.

Trial was had before a jury on special issues, and, on their answers to same, the court rendered judgment for the sum of $67.01, being the difference between the amount owing by the defendant to the plaintiff, $487.09, and the amount found in favor of the defendant as against the plaintiff, to wit, $555, said last-named sum consisting of $180 actual, damages and $375 exemplary damages.

The jury found that the defendant had paid the plaintiff the sum of $300, for which the plaintiff had not given him credit, which credit, when applied on the plaintiff's note, left the balance of $487.09, as found by the court.

The jury also made the following findings: That the defendant Denton was not about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors at the time the affidavit was made; that the plaintiff, at the time of making the affidavit for attachment, did not have probable cause to believe that the defendant was about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors; that the facts and circumstances were not such as to have induced a reasonably prudent person, in plaintiff's place, to believe that the debtor was about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors; that the plaintiff, or its agent who made the affidavit for attachment in this suit, made said affidavit and caused said writ of attachment to be issued by reason of malice or with intent to oppress the defendant.

The court instructed the jury that malice may be inferred from the lack of probable cause; that if they found that the attachment was issued with malice and without probable cause, that "they may assess exemplary damage against the plaintiff," and, in that event, they should answer: "What amount of exemplary damages do you assess against the plaintiff? Answer in dollars and cents." The jury answered "$375." The court, in addition to the findings of the jury, found actual damage in the sum of $180 in favor of the defendant.

Plaintiff's proposition No. 1 alleges error on the part of the trial court in permitting the defendant to testify that plaintiff's agent told him that the taking of the note and mortgage, at the time same were executed, was only a matter of form and that he could take his time to pay the note, just so

Bean & Klett, of Lubbock, for appellant.
E. A. Bills and T. Wade Potter, both of Littlefield, for appellee.

RANDOLPH, J. This suit was filed by the lumber company against the appellee, Denton, to recover on a note in the sum of $950.30, secured by a lien on about 11 head of mules and bearing a credit of $328.15. At the time of the filing of the suit, appellant's manager made affidavit for the issuance of an attachment, alleging as a ground therefor that the defendant was about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors, and this attachment was levied upon 11 bales of cotton.

The defendant, Denton, answered by general demurrer, general denial, and a special

limitation did not bar the debt, and that they wanted the papers fixed to satisfy the president of the company, who was "hard boiled," for the reason that same was immaterial and too remote to tend to prove or disprove malice or other wrongful conduct of the plaintiff in securing the issuance of the attachment and could only have the effect of inflaming or prejudicing the jury against the plaintiff.

The note and mortgage sued on were executed in September, 1925, for goods sold to defendant in May, 1925. The affidavit for attachment was made on November 15, 1927— more than two years after the execution of the note and mortgage. Such testimony, in the first place, did not tend in any degree to establish malice in the making of the affidavit and in having the writ issued and levied upon defendant's property and, in any event, it was too remote to connect the making and delivery of the note and mortgage with the making of the affidavit. The trial court and the jury could not, after that lapse of time, indulge in the presumption that the two were so connected as to warrant them in finding that the writ was issued maliciously. This evidence could only have one effect, and that was that the plaintiff had promised the defendant he would not have to pay it and that the plaintiff had violated its agreement by bringing the suit.

■ When the intent with which the act is done is in issue, resort to other acts or representations to ascertain the party's intent may be introduced, but such acts must be of a similar nature and so connected in point of time with the transaction in question— that is, the making of the affidavit—that they must be regarded as one transaction or system. Blum v. Gaines, 57 Tex. 135; Smith v. Roberts (Tex. Civ. App.) 218 S. W. 27, 28.

■ Evidence having no probative value in determining any material issue should, on objection, be excluded. Needham v. Cooney (Tex. Civ. App.) 173 S. W. 979.

■ The plaintiff complains that the trial court refused to permit its witness Hall, the agent of plaintiff who signed the affidavit upon which the attachment was issued, to testify that he had reason to believe that the defendant was about to convert his property into money for the purpose of placing it beyond the reach of his creditors. We cannot sustain this proposition. The trial court permitted the witness to detail the facts upon which he acted, but declined to permit him to testify as indicated above, and declined to permit him to state his conclusions that he had "good reason" to believe that the defendant was so disposing of his property. In this we think the trial court was correct. To hold otherwise would render the submission of the question to the jury a vain and useless thing.

■ The court erred in charging the jury that malice was to be inferred from the lack of probable cause. The existence of malice from lack of probable cause may be inferred by the jury, but such a charge placed too much emphasis upon the lack of probable cause and would lead the jury to believe that the trial court thought there was no such probable cause. It is only as a matter of evidence that the jury are permitted to indulge the inference and not a matter of law to require them to so find. Clifford v. Lee (Tex. Civ. App.) 23 S. W. 843; Gimbel v. Gomprecht (Tex. Civ. App.) 36 S. W. 781; Biering v. Bank, 69 Tex. 599, 7 S. W. 90; Willis v. McNeill, 57 Tex. 476.

■ The cross-action filed by the defendant seeks a recovery for exemplary damages, as well as actual damages. The plaintiff insists that the recovery of exemplary damages against the plaintiff was not authorized by the facts and law of the case, because the suit is not against the sheriff who levied the attachment, nor against Hall, the agent who made the affidavit for the plaintiff, but, as the plaintiff knew nothing of the conduct of the agent and the evidence did not show that plaintiff had assented to such conduct and did not show that it had adopted or ratified the action of the agent after it was done, the recovery of exemplary damages should not have been allowed.

The witness E. K. Hall was the manager of the plaintiff's lumber yard. As such manager, he was the party who transacted all its business. He sold the lumber in question and was the general agent for the plaintiff corporation, and in the transaction of its business he was the corporation. Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850, 852. Be this as it may, the collection of debts owing to the plaintiff was a part of the manager's duty, and the making of the affidavit and causing the attachment to be issued and levied upon defendant's property was clearly within the scope of his employment as manager of the company; hence, if any injury occurred to the defendant by reason of these acts, the corporation was liable. Chronister Lumber Co. v. Williams, 116 Tex. 207, 288 S. W. 402. This contention, therefore, is overruled.

For the errors indicated, the judgment of the trial court is reversed, and the case is remanded to that court for a new trial.